DENISON PAPER MANUFACTURING COMPANY, in equity,

*vs.*

ROBINSON MANUFACTURING COMPANY.

Androscoggin.    Opinion August 2, 1882.

*Equity.    Mill dam.*

In a proceeding in equity to restrain the defendants from a detention of the water flowing by their mill, the evidence showed the substance of the controversy to be whether the defendants, at a period of unusual drouth, were or were not guilty of an unreasonable detention; the defendants maintaining that they did not obstruct the natural flow except so far as was necessary to enable them to make repairs on their wheel, and the plaintiffs asserting the contrary. *Held,* That the issue is one to be tried at law, whether under all the circumstances during the drouth the acts of the defendants were or were not legally justifiable, and if not, what damage was there to the plaintiffs.

Where the evidence shows that there is a plain and adequate remedy at law, although not apparent upon the face of the bill, it is the duty of the court to decline equity jurisdiction and dismiss the bill.

BILL IN EQUITY.

Heard on bill, answer and proof.
The opinion states the case.

*Strout and Holmes,* for the plaintiffs.

To the point that this bill is maintainable we cite : Angell on Watercourses, p. 620, § § 444, 447 ; *Crittenden* v. *Field*, 8 Gray, 621–626 ; *Smith* v. *Adams*, 6 Paige, 435 ; *Burnham* v. *Kempton*, 44 N. H., 78 ; *Soc. Estab. Manufacturers* v. *Morris Canal Company*, 1 Saxton (N. J. ch.), 157.

That the complainants had a right to the natural and uniform flow of the water as it had been accustomed to flow for more than twenty years, as required by their mills, without wanton interruption or detention for purposes of sale by the respondent corporation, and subject only to a reasonable use of the water for the purposes of manufacture by said corporation, we cite : *Thurber* v. *Martin*, 2 Gray, 394 ; *Cary* v. *Daniels*, 8 Met. 466 ; *Chandler* v. *Howland*, 7 Gray, 350 ; *Bealey* v. *Shaw*, 6 East. 208, (see pp. 214, 219) and Bell's Law of Scotland, 641, cited and approved in Angell on Watercourses, p. 104, n. 1 ; *Davis* v. *Getchell*, 50 Maine, 602 ; *Lancey* v. *Clifford*, 54 Maine, 487 ; *Phillips* v. *Sherman*, 64 Maine, 174.

The complainants had a right to use the water as they had been accustomed to use it for over twenty years and that holding back the water in reservoir was adverse to the common law right of complainants. *Brace* v. *Yale*, 10 Allen, 441 ; *Clinton* v. *Myers*, 46 N. Y. 511 ; *Prentice* v. *Geiger*, 16 N. Y. (Hun.) 350.

*Charles F. Libbey*, for the defendants, cited : *Gould* v. *Boston Duck Company*, 13 Gray, 452 ; *Clinton* v. *Myers*, 46 N. Y. 518 ; *Davis* v. *Getchell*, 50 Maine, 605 ; *Burnham* v. *Kempton*, 44 N. H. 78.

SYMONDS, J. The bill alleges in substance that the plaintiffs, and those under whom they hold, for more than fifty years have owned and been in possession of valuable mills and mill privileges on the Little Androscoggin river, having the legal right to use and using, without other interruption than that now complained of, the natural flow of the waters of that stream for manufacturing purposes ; that Thompson pond, having its outlet into the river above the plaintiffs' mills, is tributary to the Little Androscoggin, and they have been accustomed to receive the ordinary flow therefrom at their mills without hinderance from time immemorial ; that

formerly a wooden dam was built across the outlet of Thompson pond, but that this did not prevent the water from flowing in its accustomed channel into the river; that this flow was ordinarily uniform and steady and sufficient to propel the machinery at the plaintiffs' mills; that about five years ago the defendants repaired and raised the dam at the outlet of the pond, and from time to time since have raised it and placed boards upon it, but were accustomed until the fall of 1874 to let the water pass the dam in quantities sufficient for the purposes of the plaintiffs' mills; that on November 14, and in December 1874, the defendants without necessity or justifiable cause closed their gates and sluice-ways at the dam across the outlet, thereby wrongfully obstructed and retained the waters of Thompson pond, and since December 30, 1874, contrary to their custom, have kept the gates and sluice-ways closed, refusing on request to open them, holding back the usual flow, and avowing their intention to continue to retain the water in disregard of the rights of the plaintiffs and to their great and irreparable injury, leaving them with their workmen and machinery idle and large quantities of materials on hand already contracted to be manufactured into paper; that an action at law is pending to recover for past damages, and that the bill is brought among other reasons to avoid multiplicity of suits and to prevent irreparable damage.

The prayer is for a perpetual injunction against the defendants restraining them from preventing the usual flow of waters into the river and to the plaintiffs' mills, in like quantity and with like steady and continuous flow as prior to their detention.

The substance of the answer is, that the dam and privileges of the defendant corporation are the oldest on the river, the original dam having been erected more than eighty years ago, and having been uninterruptedly maintained and used to the present time, for the purpose of operating mills and machinery; that about ten years ago for the purpose of storing the waste water in the wet season, the defendants strengthened their dam, placed boards upon it, so as to be able to accumulate two feet more than the original head, and bought flowage rights at large expense; and during all the time have freely vented through their gates to the

advantage of the plaintiffs in dry seasons this surplus water which would otherwise have run to waste; that they and those under whom they claim, from the erection of the original dam, have claimed and exercised the rights to control the waters of said pond appertaining to them as owners of said dam; "running generally, as was for their interest, all the machinery of their mills when there was water enough to do so, but when the water was low using it sparingly and husbanding it, sometimes in such case running their machinery on short time, and at others running only a part of their machinery, or shutting down entirely when there was not head enough to carry their machinery," and that the plaintiffs have always recognized these rights; that the flow of water from Thompson pond is not steady and uniform, but fluctuating and irregular, depending on the rainfall; that the defendants have never unjustifiably obstructed or retained the accustomed flow of the waters of Thompson pond, or avowed their intention to do so but on the contrary, being obliged to stop their mills, took great care to adjust their gates so that the full flow of the waters of said pond and all its tributaries should pass through into the river; that the cause for stopping their mills on November 14, 1874, was an extraordinary drouth during which the surface of the pond was lowered not only to the extent of the said two feet of additional head, but twenty inches below that, so that there was not head enough to run the defendants' factory, and a further reduction of the head would have prevented the use of the force pump in case of fire; that the plaintiffs did not deny the defendants' right to do this but on the contrary on November 20, purchased of the defendants a specified quantity of water for twelve days, which time was not extended, the parties failing to agree on the rates to be paid; that from December 5 to December 14,—the tenth only excepted,—the gates were closed for the same reason, after which till December 30, about one-third of the machinery was run, all that the low state of the water would permit, when, the drouth continuing and repairs being needed, advantage was taken of the opportunity to make them, by the exercise of due diligence they were completed on Saturday, January the sixteenth, the gates were hoisted on the eighteenth,

and so far as the water would allow the mills have been in operation since that time ; that during the intervals in which the gates were so closed, the defendants adjusted them so that the natural flow was not detained, but all the water which flowed into the pond passed out at the outlet.   The bill was filed December 31, 1874.   A preliminary injunction was issued, on bond given, which expired at the close of the January term, 1875, and has not been renewed.   The answer was filed February 1, 1875. About six years elapsed before the taking of the testimony was completed, and the case is now submitted upon written arguments filed since the law term in 1881.   It does not appear that any progress has been made in the civil action which was pending at the filing of the bill.

A careful reading of the evidence shows the substance of the controversy to be, whether the defendants at a period of unusual drouth, in November and December, 1874, and January, 1875, were or were not guilty of an unreasonable detention of the water flowing by their mills through the outlet of Thompson pond ; the defendants maintaining that they did not obstruct the natural flow, except so far as was necessary to enable them to make reasonable repairs on their wheel, and the plaintiffs asserting the contrary. This is precisely the question to be decided by the action at law which was instituted, and if the wrong is proved the appropriate remedy is by an adequate award of damages.   The testimony is directed much more towards affording a basis for a correct determination of that question, than to the furnishing of data for a general decree regulating the future rights of mill owners on the river ; defining what under all circumstances are to be the limits of the right of reasonable use by each.   There are, also, mills between those of the plaintiffs and those of the defendants, the owners of which are not parties to the bill.   It is not only a question of reasonable use at an exceptional stage of the waters, during a time of almost unprecedented drouth, but the defendants claim on the ground of prescriptive right, as well as on that of reasonable use, that they may lawfully husband the water when it is low, for the purpose of making it available to them in the running of part of their machinery only, or on short time, and

that, when occasion requires, they may close their gates and hold the water till it gets high enough to be capable of use at their mills. These are questions more proper to be tried and determined at law, than to be closed by the court by laying a perpetual injunction upon the defendants.

We think the weight of evidence is not in favor of the proposition that the defendants ever claimed more than has been stated; nor is reason shown to apprehend interference by them with any right of the plaintiffs which is undisputed, or which has been long established and enjoyed. The issue is one to be tried at law, whether under all the circumstances during the drouth the acts of the defendants were or were not legally justifiable on the ground of reasonable use or prescriptive right, and, if not, what damage was done to the plaintiffs. For the court in equity to assume jurisdiction of the case to prevent multiplicity of suits or irreparable damage, when seven years have elapsed since the preliminary injunction expired, during which the relations of the parties have been regulated by no order or decree of the court, and, so far as appears, no new dispute has risen, would be almost absurd.

In *Garnsey* v. *Springvale Mills*, decided in York last year, a case which furnishes almost a precise parallel to this, the bill was dismissed for the reason, as stated in the rescript of the court, that "The plaintiffs have a full and adequate remedy at law, and that the equitable interests of all parties concerned in the water flowing in the river cannot be decided on this bill."

The case of *Varney* v. *Pope*, 60 Maine, 192, is also in point, except that no action at law was there pending. But the pendency of such an action, in which legal rights are in controversy, delayed so long without approaching a decision of them and without cause shown for interference on the part of the court to stay immediate injury, is not a sufficient ground for equitable jurisdiction. In that case, the question was raised by demurrer to the bill, but "in general, if a demurrer would hold to a bill, the court, although the defendant answers, will not grant relief upon hearing the cause." Story's Eq. Plead. § 447.

"Even where it is not apparent upon the face of the bill, but the bill is framed so as to avoid the point, if in looking at the proofs it appears that the case is one for which there is a plain and adequate remedy at law, it is the duty of the court to decline jurisdiction and dismiss the bill." *Lewis* v. *Cocks*, 23 Wallace, 466; *Dumont* v. *Fry*, U. S. Cir. Court, S. D. New York, The Reporter, May 31, 1882, p. 677.

"Want of equity is not only good ground of demurrer to a bill, but is a good ground of defence when the case is established upon the merits; and this includes cases where the plaintiff's right proves to be one at law and not in equity." *Burnham* v. *Kempton*, 44 N. H. 78.

"In all cases in which doubt exists as to the legal right, a court of equity will compel the parties to go to trial at law without delay, either dissolving the injunction or maintaining it until such trial has taken place, as the justice of the case and the interests to be affected by the determination appear to require." Angell on Watercourses, § 452.

"This is not a case in which the proceedings ought to be suspended until the trial and decision of the trial at law. That would be a proper course to pursue, where a temporary injunction becomes necessary to prevent irreparable damages; but to justify such an interposition, the injury ought to be of such a nature as not to permit of delay. This is not such a case." *Dana* v. *Valentine*, 5 Metcalf, 14.

*Bill dismissed with costs.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.